**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTONIA ROBLES-CLAUDIO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 07CV146 (WWE) |
| | : | |
| | : | |
| TOWN OF ENFIELD, | : | |
| RONALD MARCOTTE, | : | |
| SCOTT SHANLEY, | : | |
| TOWN MANAGER and | : | |
| DIRECTOR OF PUBLIC SAFETY, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION ON
## MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

In her complaint, plaintiff Antonia Robles-Claudio asserts that defendants Town of Enfield, former Chief of Police Ronald Marcotte and former Town Manager and Director of Public Safety Scott Shanley violated her constitutional rights to equal protection and due process of law.  Plaintiff also asserts state law claims of defamation and intentional infliction of emotional distress.

Defendants have filed a motion for summary judgment.  For the following reasons, the motion for summary judgment will be granted.

## BACKGROUND

The parties have submitted statements of facts with accompanying exhibits and affidavits, which reveal the following factual background.

Plaintiff is a former police officer with the Enfield Police Department.  She was hired in February 2001, worked as a patrol officer and was a member of the American Federation of State, County and Municipal Employees.  At the time plaintiff was hired,

she was told that she would be required to obtain an Emergency Medical Technician certification.

In February 2002, Enfield began to develop an Emergency Medical Services ("EMS") Department to provide municipal ambulance service.[1]

In January 2004, plaintiff was assigned to attend an intensive EMT training course, which met five days per week, 40 hours per week for three weeks. The traditional EMT course took four months but it was not offered at the time that plaintiff sought EMT certification.

Prior to the certification examination, the Enfield Police Department provided plaintiff with a review course and practice examination.

Although she passed the practical examination, plaintiff failed the written portion of the EMT certification examination. On a second attempt, plaintiff again failed the written examination.

In March 2005, then-Captain Anjo Timmerman informed plaintiff that she would be suspended if she did not pass the EMT written examination on her third attempt. To assist her effort to become EMT-certified, the Enfield Police Department provided her with private tutoring.

Plaintiff failed the examination for the third time on June 17, 2005. Thereafter, a notice was delivered to plaintiff's home. The notice informed her of her suspension with pay, as of July 13, 2005 pending the outcome of the hearing, which occurred July 20,

---

[1]On September 19, 2005, Enfield's EMS department commenced its 24-hour emergency service.

2005.  During the hearing, plaintiff had both union representation and an attorney present.

By letter hand delivered to her home on July 22, 2005, plaintiff was informed that she would be returned to active duty full-time status.  However, the letter provided that if she did not become EMT-certified by September 30, 2005, the hearing would reconvene to consider her termination.

Prior to taking the examination on September 16, 2005, plaintiff sought private tutoring and took a 24-hour refresher course as required by the National Registry of Emergency Medical Technicians and the State of Connecticut Office of Emergency Medical Services.  Nevertheless, plaintiff failed the fourth examination.

On September 17, 2005, plaintiff told her supervisor, Lieutenant Gary Collins, that she was resigning.  However, Lieutenant Collins did not accept her resignation.

On October 11, 2005, plaintiff received notice of the October 13, 2005 hearing to consider her termination.  Plaintiff attended the hearing and was represented by a union representative and an attorney.  Through her attorney, plaintiff represented to the panel, which included defendants Marcotte and Shanley, that her termination would result in financial hardship.

Chief Marcotte recommended that plaintiff be terminated.  By letter dated October 20, 2005, plaintiff was informed that she had been terminated for failure to become EMT-certified.

Pursuant to the provisions of the relevant collective bargaining agreement, plaintiff grieved her termination.  Specifically, plaintiff maintained that she was

terminated without just cause in violation of Article 17, Section 1 of the collective

bargaining agreement.[2]

Director of Human Resources William Mahoney conducted the Step Three

grievance hearing on November 4, 2005. In a written decision, Mahoney found that

plaintiff had not been terminated without just cause.

Plaintiff's union appealed the grievance denial to the Connecticut State Board of

Mediation and Arbitration ("CSBMA"). On March 14, 2006, the CSBMA heard plaintiff's

grievance.

In April 2006, plaintiff was hired by the Simsbury Police Department. When she

applied for the Simsbury position, plaintiff informed the Simsbury Police Department of

the reason for her termination.

On September 18, 2006, the CSBMA issued its ruling sustaining plaintiff's

grievance. In its ruling, the CSBMA stated that "just cause" required (1) that the

employee receive notice of the forthcoming discipline responsive to the prohibited

conduct, and (2) that the prohibited conduct "impact negatively on the business of the

employer." The CSMBA found that plaintiff had received notice of the forthcoming

discipline but that the effect of plaintiff's failure to achieve EMT certification was

"minimal, bordering on vestigial." In so holding, the CSMBA noted that (1) plaintiff had

functioned as a police officer in the Town of Enfield for three years without EMT

certification and without indication that her performance was sub-standard for lack of

certification; (2) exemptions from certification had been granted to certain officers; (3)

_____

[2]Article 17, Section 1 provides that bargaining unit members shall not "receive a
written reprimand, be suspended, demoted or discharged except for just cause."

such certification was not a contractual requirement; and (4) the Town's development of an ambulance service meant that police officers would no longer be expected to act as first responders.

As noted in the CSMBA ruling, eight individuals, Deputy Chief Anjo Timmerman, Officer Bob Chadderton, Detective Bill Cooper, Officer Bajek, Sergeant Pat Damato, and Lieutenants Red Edgar, Les Howe and Rich Meurnier, were granted exemptions from becoming EMT-certified.

In mid-2007, when the EMS department became fully functional, the EMT certification requirement for police officers was suspended.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party

submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.

Equal Protection

Defendants argue that they are entitled to summary judgment on plaintiff's equal protection claims based on her status as a Hispanic woman and as a class of one.

As an initial matter, summary judgment will be granted on plaintiff's class of one claim in light of the United States Supreme Court's recent holding that a class-of-one equal protection claim is not cognizable in the context of public employment.  Engquist v. Oregon Dept. of Agric., 2008 WL 2329768 (U.S. 2008).

Claims alleging violation of the equal protection clause are analyzed pursuant to the same standards as Title VII.  Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).  To establish her prima facie claim of racial discrimination based on disparate treatment, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Although this initial burden is not onerous, plaintiff must show that the adverse employment action was not made for legitimate reasons. Thomas v. St. Francis Hospital and Medical Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If plaintiff establishes a prima facie case, defendants must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action.  Each plaintiff must then prove by a preponderance of the evidence that the supposed legitimate

reason is actually a pretext for discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).

For purposes of ruling on this motion for summary judgment, the Court assumes that plaintiff has established the prima facie case.  As a non-discriminatory reason for plaintiff's termination, defendants assert that plaintiff was terminated due to her inability to become EMT-certified after four attempts.   Plaintiff proffers as evidence of discriminatory animus (1) the CSMBA ruling that she was terminated without "just cause" in violation of the collective bargaining agreement, and (2) the fact that eight other individuals had been granted exemptions.   However, this evidence evinces no inference of discriminatory intent.

The CSMBA determined only that plaintiff's termination was in breach of Article 17, § 1 of the collective bargaining agreement.  The CSMBA decision considered whether just cause existed within the context of whether the "prohibited conduct impacted negatively on the business of the employer."  In no way does the CSMBA decision equate its finding of no just cause to a finding of discriminatory intent.   <u>See</u> <u>United Steelworkers of America v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 597 (1960) ("an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.")

Further, plaintiff has failed to establish that the eight individuals – – Deputy Chief Timmerman, Officer Chadderton, Detective Cooper, Officer Bajek, Sergeant Damato, and Lieutenants Edgar, Howe and Meurnier – – may be considered comparators so as to raise an inference that she was treated differently than other similarly situated individuals.   When a plaintiff seeks to draw an inference of

discrimination by showing that she was treated differently than individuals outside the protected class who are similarly situated to plaintiff, Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997), the circumstances of the plaintiff and the individuals need not be identical, but there should be a reasonably close resemblance of facts and circumstances.  Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).  The Court should determine whether plaintiff and the asserted comparators are similar in significant respects by considering whether the respective individuals had the same supervisors, were subject to the same performance evaluation and disciplinary standards, and engaged in conduct of comparable seriousness without any differentiating circumstances.  Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001); Graham, 230 F.3d at 40; Shumway, 118 F.3d at 64.

The eight individuals who were granted exemptions are not similarly situated in significant respects so as to raise an inference of discriminatory animus or pretext. Deputy Chief Timmerman Lieutenant Howe and Detective Cooper had prior EMT certification.  Deputy Chief Timmerman and Lieutenants Howe, Meurnier and Edgar held supervisory positions requiring different work duties and standards from that of plaintiff.  Similarly, as a Communications Officer, Officer Chadderton had no patrol duty and was subject to very different job responsibilities and expectations.  Lieutenants Meurnier and Edgar, Sergeant Damato, and Officer Bajek were not under the command of Chief Marcotte and received exemptions from former Chiefs Skower and/or Foy. Accordingly, these individuals cannot be considered similarly situated in significant respects to plaintiff due to their differences in job responsibilities, standards,

supervisors and distinguishing circumstances such as prior EMT certification.

Summary judgment is appropriate on the equal protection claims.

Due Process

Plaintiff alleges that defendants' violation of her constitutional right to procedural and substantive due process deprived her of liberty and property interests.

The Court assumes for purposes of ruling on this motion for summary judgment that plaintiff has established a liberty and property interest. Nevertheless, the Court will grant summary judgment on plaintiff's procedural and substantive due process claims.

Procedural Due Process

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n. 7 (1972).

The fundamental requisite of procedural due process is the opportunity to be heard. See Boddie v. Connecticut, 401 U.S. 371, 377 (1971). This opportunity must be granted within a meaningful time and manner. Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Further, the hearing must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

To determine what process is due, the Court must consider: (1) the private interest that will be affected; (2) the risk of erroneous deprivation through the procedures, and the probable value of additional or alternative safeguards; and (3) the government's interest, including the function involved and the administrative burdens of the additional safeguards. Mathews v. Eldridge, 424 U.S. 319 (1976).

In this instance, plaintiff had a strong interest in her employment.  However, defendants afforded plaintiff with a pre-termination hearing consistent with the principles of Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985). Loudermill provides that public employees are entitled to oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story, before being subjected to the loss of employment. Munafo v. Metro. Transp. Auth., 285 F.3d 201, 212 (2d Cir. 2002).  Here, the undisputed facts reveal that plaintiff received notice of the charges against her and the hearing, that the hearing took place, and that plaintiff had an opportunity to present her position prior to her termination.

The collective bargaining agreement also provided plaintiff with post-deprivation remedies.  Plaintiff availed herself of these remedies by grieving her termination.  There is no evidence that plaintiff received less process than she was due pursuant to the terms of the collective bargaining agreement.  Courts have generally held that post-deprivation grievance procedures provided in a collective bargaining agreement satisfy due process.  Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 213 (2d Cir. 2003).  Accordingly, the Court finds that no procedural process violation occurred.

Substantive Due Process

The Second Circuit has instructed that the substantive due process component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer. McClary v. O'Hare, 786 F.2d 83, 89 (2d Cir. 1986).  Thus, a public employee cannot

challenge termination pursuant to the substantive due process clause.  <u>Chaffer v. Bd. Of Educ.</u>, 75 Fed. Appx. 12, 13 (2d Cir. 2003).

Additionally, plaintiff's evidence does not meet the standard required to prevail on a substantive due process claim.  To succeed on her substantive due process claim, plaintiff must show that defendants' conduct "shocks the conscience."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).  Only the most egregious official conduct violates a party's substantive due process rights.  <u>Cusick v. City of New Haven</u>, 2005 WL 1916364 (2d Cir. 2005) (failure of officials to provide inculpatory information unearthed in murder investigation was not conscience shocking); <u>see</u> <u>also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) (substantive due process doctrine bars official conduct that affords "brutality the cloak of law").  Even conduct considered to be reprehensible may not fall within the narrow range of conscience shocking conduct that violates substantive due process.  <u>Cusick</u>, 2005 WL 1916364.

In terminating plaintiff for her failure to become EMT-certified, defendants appear to have misapplied the just cause provision of the collective bargaining agreement. However, no evidence indicates that defendants' acted in an outrageous or conscience shocking manner.

<u>State Law Claims</u>

Plaintiff's remaining claims are premised on state law.  Having dismissed all of the federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

<u>Motions to Strike</u>

Defendants have moved to strike portions of plaintiff's statements of fact and certain evidence that are noncompliant with the Federal Rules of Civil Procedure and the relevant Local Rules.  The Court has considered all of the statements of fact, averments and evidentiary submissions in light of the record as a whole in determining the existence of factual disputes.   In light of the grant of summary judgment in defendants' favor, the Court will find that the motion to strike is moot.

**CONCLUSION**

For the foregoing reasons, the defendants' motions for summary judgment [doc. #25] is GRANTED.

The motion to strike [doc. #29] is MOOT.

The Court declines to exercise supplemental jurisdiction over the state law claims.  Plaintiff's state law claims are dismissed without prejudice

The clerk is instructed to close this case.

Dated this __16_ day of July, 2008 in Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE